Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3514 | **DATE** | 8/29/2001 |
| **CASE TITLE** | Brown vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/19/01 at 11:00AM.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. The City's motion to dismiss Counts IV, V and VIII-X is granted as to Counts IV and V and denied as to Counts VIII-X. Weber's motion to dismiss Counts VI and VII is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 3 0 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JD | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG 29 PM 4:11 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE BROWN,

    Plaintiff,

v.                          00 C 3514
                          Judge George M. Marovich

CITY OF CHICAGO, and GERALD
WEBER,

    Defendants.

DOCKETED
AUG 30 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Christine Brown ("Brown") filed a First Amended Complaint against City of Chicago ("City") and Gerald Weber ("Weber") alleging, <u>inter alia</u>, excessive force (Count I), failure to provide medical care (Count II), a <u>Monell</u> claim (Count IV), and conspiracy (Count V), pursuant to 42 U.S.C. § 1983 ("§ 1983"), and various state claims (Counts VI-X). The City has moved to dismiss Counts IV, V and VIII-X pursuant to Fed. R. Civ. P. 12(b)(6).[1] Weber has moved to dismiss counts VI and VII.[2] For the reasons set forth below, the Court denies Weber's motion to dismiss, and grants in part and denies in part the City's motion to dismiss.

---

[1] The City originally included Count III in its motion to dismiss. The City has since indicated in its reply brief that it withdraws its motion as it relates to that claim.

[2] There remain three claims against Weber (Counts I, II and IV) which Weber has answered and which are not the subject of these motions.

1



## BACKGROUND

The Complaint alleges the following facts which, for the purposes of ruling on this motion, are taken as true. <u>Hishon v. Kemp & Spalding</u>, 467 U.S. 69, 73 (1984). Throughout the late night hours of August 28, 1998 and the early morning hours of August 29, 1998, Brown and Weber, for reasons not revealed in the Complaint, were together in Weber's vehicle. Around 7:00 a.m. on August 29, 1998, Brown and Weber, still in Weber's vehicle, began to argue. Weber believed he had been the victim of attempted theft. Weber identified himself to Brown as a member of the Chicago Police Department ("CPD") and showed Brown his CPD badge. At that point, Brown got out of the car and fled. Weber pursued her in his vehicle and on foot. While chasing Brown, Weber again identified himself as an officer of the CPD and threatened to kill Brown.

Weber eventually cornered Brown under a porch of the residence located at 6322 South Wood in Chicago. There the two struggled and Weber drew his firearm and shot but missed Brown. Weber fired again wounding Brown. Weber attempted to fire a third shot which was foiled when his firearm jammed. At that point, Weber fled the scene without calling for medical assistance, leaving Brown wounded and bleeding. An hour after the incident, Weber reported to the CPD that he had been the victim of attempted theft and that he had fired his weapon.

Subsequently, Weber and other officers, including his partner Officer Kevin Muth, concealed his wrongdoing. They "fabricate[d] false accounts of the incident including, but not limited to, the alleged fact that two unknown black males working together with . . . [Brown] attempted to "car-jack" . . . Weber, and that . . . Weber was in fact with Officer Muth at an unnamed woman's home during various times of the evening rather than together with . . . Brown at the scene." (Am. Compl., ¶ 19) As a result of this incident, Brown "suffered severe physical, mental, emotional, and psychological injuries." (Am. Compl., ¶ 18)

Brown's Complaint alleges various § 1983 and state law claims. In response, the City and Weber have each filed the present motions seeking to dismiss these claims.

## DISCUSSION

### I. Standard for a Motion to Dismiss

When considering a motion to dismiss, a court must view the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts in the complaint must be accepted as true. Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994). Dismissal is proper only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of a claim which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The Supreme Court has made very clear that there is no heightened pleading requirement for civil rights actions. Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). "Rather, as in all civil litigation, the plaintiff is charged with the responsibility of setting forth, as mandated by Rule 8(a) of the Federal Rules of Civil Procedure, 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Baxter by Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734 (7th Cir. 1994); see also Sledd v. Lindsay, 102 F.3d 282, 288-89 (7th Cir. 1996).

While the federal rules require only notice pleading, a complaint "which merely recites bare legal conclusions" cannot survive a motion to dismiss. Illinois v. Roland, 812 F. Supp. 855, 862 (N.D. Ill.1993). To withstand a motion to dismiss, a complaint must allege facts which sufficiently set forth the essential elements of the cause of action. Gray v. County of Dane, 854 F.2d 179, 182 (7th Cir. 1988). In evaluating a motion to dismiss, the Court need not "assign any weight to unsupported conclusions of law." Id. To provide fair notice, a complaint "must at least 'include the operative facts upon which a plaintiff bases his claim.'" Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992)(quoting Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 198 (7th Cir. 1985)).

4

II. <u>Monell Claim</u>

Under <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 691 (1978), municipalities may be held liable under § 1983 for deprivations of federal rights. Municipal liability, however, is limited to action for which the municipality is actually responsible--that is, acts which the municipality has officially sanctioned or ordered. <u>Id.</u> *Respondeat superior* will not suffice to impose § 1983 liability on the municipality. <u>Id.</u> Rather, "it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694.

Courts have identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

5

Baxter by Baxter, 26 F.3d at 735(citations omitted).

"Monell is a case about responsibility." Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). Properly put, the question before this Court is whether Brown's Complaint has appropriately distinguished acts of the municipality from acts of employees of the municipality. In other words, is Brown simply attempting to hold the City vicariously liable for the wrongful acts of its employees--e.g., Weber. With this in mind, municipal liability under § 1983 only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483.

In Count IV, Brown's Complaint sets forth two allegations of policy by omission. It is Brown's claim that the City acted deliberately indifferent by failing to train its officers regarding excessive force and failing to screen hiring candidates for a propensity towards violence. In order to state a claim for municipal liability for failure to train, Brown needed to allege that the municipality was "on notice of a pattern of constitutional violations resulting from the inadequate training." Hirsch v. Burke, 40 F.3d 900, 904 (7th Cir. 1994). Likewise, Brown needed to allege notice of such a pattern which resulted from the City's failure to screen employment applicants.

Unfortunately, Brown's Complaint contains nothing more than

6

boilerplate allegations of municipal policies of failing to train employees about excessive force and failing to screen applicants for a propensity towards violence. See McTigue v. City of Chicago, 60 F.3d 381, 382-83 (7th Cir. 1995)("Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient. . . . The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability devoid of any well-pleaded facts."(quoting Baxter by Baxter, 26 F.3d at 736)). Indeed, other courts in this District have recognized that "[c]laims based wholly on conclusory allegations of de facto municipal policy constitute one of the most prevalent forms of abuse in § 1983 actions." Copeland v. Northwestern Memorial Hosp., 964 F. Supp. 1225, 1240 (N.D. Ill. 1997)(citations omitted).

Count IV of Brown's Complaint also alleges two additional policies: 1) the explicit policy that officers must be "on duty", carry loaded weapons and enforce the law 24 hours a day; and 2) the custom of a code of silence among the officers regarding police misconduct. This Court has significant misgivings about any Monell claim based on the policy of officers being "on duty", armed and enforcing the law 24 hours a day. However, this Court need not decide whether such a claim could ever be viable, since Brown has again only provided a bare boilerplate of a claim.

7

While the Court does not expect extensive factual detail in this type of a pleading, it does require more than a recitation of legal conclusions. Unfortunately, the bald Complaint contains no allegations of a connection between such a policy and a pattern of unconstitutional conduct, nor does it contain allegations that the City had knowledge of such a problem.

Brown's final <u>Monell</u> claim is that a policy exists in the form of a code of silence amongst the officers regarding police misconduct. While Brown's Complaint contends that a code of conduct exists and that the City had knowledge of the existence of the policy, Brown has failed to allege any nexus between the policy and Brown's own injury (much less any pattern of unconstitutional conduct). Brown's Complaint does not allege how the "code of silence" could possibly be the proximate cause of the constitutional deprivation Brown suffered as a result of the shooting. Accordingly, all four of Brown's claims of municipal liability against the City included in Count IV cannot survive.

III. <u>Conspiracy Claim</u>

Count V of Brown's Complaint is a conspiracy claim pursuant to 42 U.S.C. §§ 1983 and 1985. The claim includes allegations of conspiratorial conduct between Weber, some of his fellow officers and the City. In its motion to dismiss, the City argues that whatever the merits of the claim against Weber and the other officers, the City is protected from any such claim by the

doctrine of intracorporate immunity. "Intracorporate immunity provides that a corporation only acts through its officers, directors, and agents and is incapable of conspiring with those designated to act on its behalf." McCraven v. City of Chicago, 109 F. Supp. 2d. 935, 946 (N.D. Ill. 2000). This being the case, it would be impossible for the City to have conspired with its officers as Brown alleges.

However, Brown argues that the City is exempt from immunity by one of the two exceptions to the intracorporate immunity doctrine. The two recognized exceptions to the intracorporate immunity doctrine are: 1) where "the conspiracy was part of some broader discriminatory pattern . . . or that it in any way permeated the ranks of the organization's employees;" or 2) "where corporate employees are shown to have been motivated solely by personal bias." Hartman v. Board of Trustees of Community College Dist. No. 508, 4 F.3d 465, 470-71 (7th Cir. 1993). This claim does not fall under either exception. The Complaint contains no allegation of discrimination, let alone discrimination that constituted a broad pattern. Furthermore, there is no allegation that the conspiracy permeated the ranks of the employees. The Complaint also has failed to allege that Weber's actions were motivated by personal bias. Rather the Complaint continuously alleges that Weber's actions stemmed from his belief that he had been the victim of a theft. Since neither

9

exception applies to the present facts, the City is protected from Weber's conspiracy claim by the intracorporate immunity doctrine.

IV. State Law Claims

In Counts VI through X, Brown asserts numerous claims of battery and negligence under Illinois law. Since Brown has brought claims against the City and one of its employees, the statute of limitations created by the Illinois Tort Immunity Act applies. It states: "No civil action may be commenced in any court against a local entity or any of its employees for an injury unless it is commenced within one year of the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. § 10/8-101. Brown claims that the injuries at issue occurred on August 7, 1998. Brown did not file her Complaint until June 12, 2000. Consequently, Brown's state law claims were not filed within the one-year period provided for by the statute of limitations.

However, Brown argues in her response that her state law claims should be preserved by the doctrine of equitable tolling. Brown asserts that she "will offer evidence that her mental condition after this shooting made it impossible for her to discover essential information bearing on the existence of her claim." (Plt's Resp. at 14) Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if

despite all due diligence [s]he is unable to obtain vital information bearing on the existence of . . . [her] claim." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1991)(citations omitted). Furthermore, mental incapacity can "be sufficient to toll the filing period, but only if the plaintiff was 'entirely incapable of bringing legal action' or discovering the vital information for the claim." Chaney v. City of Chicago, No. 95 C 1979, 1996 WL 718519, at *4 (N.D. Ill.)(citing Barnhart v. United States, 884 F.2d 295, 300 (7th Cir. 1989)).

In her Complaint, Brown alleges that as a result of the shooting she has "suffered severe physical, mental, emotional, and psychological injuries." (Compl., ¶ 18) It will undoubtedly be a difficult burden for Brown to maintain a claim that she was "entirely incapable of bringing legal action" for the purposes of a summary judgment motion or trial. This is particularly true since she will have to prove that she was unable to file, at a minimum, a claim against the City and John Doe defendants. Such a claim would require only that she had knowledge that she was shot by a Chicago Police Officer. However, the Court, which must accept the allegations in Brown's Complaint as true, finds that Brown has sufficiently pled mental incapacity to defeat a motion to dismiss. Only through further discovery will it be possible to determine whether the injuries she alleged were of the extreme nature necessary to toll the statute of limitations. It is

11

impossible to make that determination on the pleadings alone.

## Conclusion

For the reasons set forth above, the City's motion to dismiss Counts IV, V and VIII-X is granted as to Counts IV and V and denied as to Counts VIII-X. Weber's motion to dismiss Counts VI and VII is denied.

ENTER:

George M. Marovich
United States District Judge

DATED: August 29, 2001